UNITED STATES DISTRICT COURT

DISTRICT COURT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 3:15CR034 (JAM) |
| PLAINTIFF | : | |
| | : | |
| v. | : | |
| | : | |
| BOMANI AFRICA, | : | |
| DEFENDANT | : | February 7, 2023 |

## DEFENDANT BOMANI AFRICA'S
## MEMORANDUM IN AID OF SENTENCING

I. **INTRODUCTION**

On May 28, 2015, defendant Bomani Africa was arrested in the Eastern District of Pennsylvania for Robbery and Carjacking offenses arising out of crimes that occurred in the State of Connecticut. Mr. Africa was transported to the District of Connecticut and on June 3, 2015, he was arraigned on a Second Superseding Indictment and ordered detained. He has remained detained as he approaches the Eigth anniversary of his initial arrest.

On December 16, 2015, Mr. Africa entered pleas of guilty before this Court. As to the Third Superseding Indictment that had been filed against him, Mr. Africa entered a guilty plea to Count Three which charged him with Armed Bank Robbery in violation of 18 U.S.C. §§ 2113(a)(, 2113 (d) and 2. Mr. Africa also waived trial by Indictment and entered pleas of guilty to an Information that charged him with Conspiracy to Commit Bank Robbery, in violation of 18 U.S.C. § 371, and Armed Bank Robbery in violation of 18 U.S.C. § 2113(a), 2113(d) and 2. The overt acts that Mr. Bomani admitted to with regards to the Conspiracy count included the planning and committing of suburban bank robberies, the burning of a car associated with one of the robberies and the theft of more than $15,000.00. As for the

1

substantive count, Mr. Bomani admitted to a December 13, 2014, robbery of another suburban bank, during which he, along with others, possessed a firearm and put in jeopardy the life of another individual.

Mr. Africa and the undersigned have reviewed the Pre-Sentence Report prepared by United States Probation Officer Lauren A. Harte. The presentence report describes the nature of the offenses to which the defendant pled guilty, the government's criminal investigation, the defendant's background and calculates the defendant's Sentencing Guidelines imprisonment range and other punishments. The defendant now stands ready for sentencing.

This Memorandum is submitted on behalf of Mr. Africa, who is scheduled to be sentenced by your Honor on February 16, 2023. It is hoped that the undersigned is articulate enough to identify and document Mr. Africa's individual characteristics to assist the Court in determining a sentence that is appropriately tailored to serve both the interests of justice and the sentencing goals of 18 U.S.C. § 3553(c).

As the Court has already sentenced a co-defendant in this case, a co-defendant whose background, age, life history criminal record and whose involvement in the criminal acts charged bear a striking similarity to defendant Bomani Africa's, the defendant submits that an identical sentence would be reasonable and justified in this case. The co-defendant was sentenced to a period of 96 months and Bomani Africa respectfully submits that such a sentence would be "sufficient but no more than necessary" punish him for the acts that he committed in the District of Connecticut.

## II. BACKGROUND OF THE OFFENSE

The government filed, under seal, a *Trial Memorandum and Notice of Intent to Offer Evidence*, dated February 11, 2016 [Docket No. 81], and Mr. Africa believes that the government's recitation therein correctly lays out the criminal activity of Mr. Africa and his co-conspirators. Rather than repeat that document's description of the offense conduct, Mr. Africa adopts its factual statements and agrees that the evidence of Mr. Africa's planning and participation in the bank robberies charged and the related conduct, was overwhelming.

On June 16, 2015, Bomani Africa, pursuant to a plea agreement between Mr. Africa and the government, entered guilty pleas to three separate offenses. Pursuant to the plea agreement, the parties agreed, based upon an initial assessment of the parties, that Mr. Africa's crimes resulted in a total offense level of 29, and that the information readily available to both parties, placed Mr. Africa in Criminal History Category V. As such, the plea agreement assessed Mr. Africa as having a sentencing range of 140 to 175 months. The plea agreement also contemplated that Mr. Africa could conceivably be designated a Career Offender, which would result in a Criminal History Category of VI and a sentencing range of 188 to 245 months.

It is Mr. Africa's request that the Court impose a sentence of 96 months as punishment for the offenses he has committed. Such a sentence would be a non-guideline sentence and would be arrived at by determining that in Mr. Africa's specific situation, after reviewing his individual characteristics and personal history, that a variance from the sentencing guidelines is appropriate.[1] Such a sentence would also be arrived at by

---

[1] A court may impose a sentence outside the properly calculated sentencing guideline range through either a departure or a variance. A "departure" is typically a change from the final sentencing range computed by examining the provisions of the Guidelines themselves. It is

determining that a guideline sentence would be unduly harsh, unjustified, and more than necessary to satisfy the directives of 18 U.S.C. § 3553(a).

## III. PERSONAL HISTORY AND CHARACTERISTICS

In preparation for his sentencing, Mr. Africa and the undersigned set aside time to review his personal history and characteristics. Bomani Africa began to describe the life he but halfway through the conversation, Mr. Africa decided that the Q & A process was not working and rather than continue, Mr. Africa indicated that he would prepare a narrative of his life, in his own words. His words, entitled "The Story of My Life" is attached to this submission as Exhibit A.

In addition to the story of his life, the defendant wants the Court to know that during the seven years that he has been incarcerated at the Wyatt Detention Facility he has kept himself occupied with work, learning and teaching. As for his work, Mr. Africa initially completed the Basic Kitchen Standards program and received a certificate for its completion. As a result, Mr. Africa was given a job on the kitchen staff. Following a lengthy period of excellent performance, Mr. Africa was placed on the "Captain's Crew," a placement enjoyed by a select group of inmates who enjoy the trust of the professional staff and the respect of other inmates. (See Correspondence from K. Ereio, Unit Counselor, Wyatt Detention

---

frequently triggered by a prosecution request to reward cooperation . . . or by other factors that take the case "outside the heartland" contemplated by the Sentencing Commission when it drafted the Guidelines for a typical offense. A "variance," by contrast, occurs when a judge imposes a sentence above or below the otherwise properly calculated final sentencing range based on application of the other statutory factors in 18 U.S.C. § 3553(a). See U.S. Sentencing Commission, Departure and Variance Primer, June 2013 (http://www.ussc.gov/sites/default/files/pdf/training/primers/Primer_Departure_and_Variance.pdf ).

Center, February 28, 2022, attached hereto as Exhibit B.) Mr. Africa has remained disciplinary free for his entire stay at Wyatt and rounds out his time with reading, corresponding with family and friends and acting as a mentor to younger inmates who seem to benefit from someone who has "been there" and "done that."

**THE APPROPRIATE SENTENCE**

A District Court should normally begin all sentencing proceedings by calculating, with the assistance of the Presentence Report, the applicable Guideline Range. Gall v. United States, 128 S. Ct. 586, 596 (2007). The Guidelines provide the "starting point and the initial benchmark" for sentencing, Gall, 128 S. Ct at 596, and the District Courts must "remain cognizant of them throughout the sentencing process." Id, at 596 n.6. Now, however, it is clear that the Guidelines are guidelines – that is, they are truly advisory. United States v. Cavera, 550 F.3d 180 (2d Cir. 2008) [Emphasis added]. "A District court may not presume that a Guideline sentence is reasonable, it must instead conduct its own independent review of the sentencing factors, aided by the arguments of the prosecution and defense. District Judges are, as a result, generally free to impose sentences outside the recommended range. Id. Once again, District judges may exercise discretion in fitting sentences to a defendant's individual characteristics. United States v. Crosby, 397 F.3d 103, 114 (2d Cir. 2005).

Although settled case law is quite clear that the guideline range is not to be regarded as the measure of reasonableness (indeed to do so is "procedurally unreasonable")-that injunction notwithstanding – the gravitational pull that the Guidelines continue to exert on

federal sentences is very substantial, driven in principal part, by the cognitive "anchoring effect" that the Guidelines exert. As Judge Rakoff of the Southern District of New York has observed: "[T]he very first thing a judge is still required to do at sentencing is to calculate the Guideline range, and that creates a kind of psychological presumption from which most judges are hesitant to deviate too far." Hon. Jed S. Rakoff, Why the Federal Sentencing Guidelines Should be Scrapped, 26 Fed. Sent'g 6,8 (Oct. 1, 2013).

Similarly, the Hon. Mark W. Bennett explained in "*Confronting Cognitive 'Anchoring Effect' And 'Blind Spot' Biases in Federal Sentencing: A Modest Solution For Reforming A Fundamental Flaw*, 104 J.Crim. L & Criminology 489 (2014): "Comprehensive data from the USSC establishes that the [post-Booker/Gall] discretion has, for the most part, had a surprisingly limited impact on federal sentencing. This is due primarily to the robust anchoring impact of first computing the advisory Guideline range before considering the other non-numerical § 3553 (a) sentencing factors." Id. At 533-534. *See*, United States v. Ingram, 721 F.3d 35, 40 (2d Cir. 2013) (Calabresi, J.,concurring) (discussing how "anchoring effects" influence judgments and noting that the court "cannot be confident that judges who begin" at a higher guideline range "would end up reaching the same 'appropriate ' sentence they would have reached" if they started from a lower guideline range). Molina-Martinez v. United States, 136 S.Ct. 1338, 1353 n. 6, (2016) (Alito, J. concurring in part). (Noting the "anchoring" effect of Guidelines).

Notwithstanding the Supreme Court's clear mandate that a sentencing court consider the individualized circumstances of a defendant's life history and background, the Guidelines are too often relied upon as a talismanic measure by which to impose sentence. The Guideline range is primarily driven by aggravating factors using points and numbers.

Mitigating factors are not part of the Guidelines calculation. There is no numerical value for an offender's youth, their traumas, hardships and lack of guidance and direction and the impact of trauma on an individual's life and decision making.

While U.S. Sentencing Commission mythology suggests that the Guidelines resulted from a careful empirical analysis of existing sentencing patterns, in fact as Michael Tonry has written, they were better described as the product of "back of the envelope calculations and collective intuitive judgments." Justice Stephen Breyer, the principal architect of the Guidelines, conceded that they reflected political compromises, not the kind of careful criminological research that one would expect to be done by an expert agency.

We ask that the court, in determining the appropriate sentence for Mr. aFRICA, acknowledge an awareness of the anchoring effect of the flawed Sentencing Guidelines, consider his trauma infused life, when determining the appropriate sentence in this case.

**THE CAREER OFFENDER GUIDELINE DESIGNATION**

The U.S. Probation Officer has designated Mr. Africa as a Career Offender pursuant to U.S.S.G. § 4B1.1 and therefore subject to an advisory sentencing range of 188 to 235 months. (PSR ¶ 99). Were it not for his Career Offender designation, Mr. Africa would be facing a guideline sentence of 140 to 175. While Mr. Africa doesn't dispute that he is technically a Career Offender within the meaning of §4B1.1, we submit that such a designation would unfairly and unjustifiably increase his sentence range would violate the parsimony clause. We respectfully urge the Court to so find.

**A "NON-GUIDELINE" SENTENCE IS APPROPRIATE GIVEN THE NEED TO AVOID UNWARRANTED SENTENCE DISPARITIES**

In the section entitled "Introduction and General Application Principles" of the United States Sentencing Guideline Manual, the "Policy Statement" provides that "Congress sought uniformity in sentencing by narrowing the wide disparity in sentences imposed by different federal courts for similar criminal conduct by similar offenders… Congress sought proportionality in sentencing through a system that imposes appropriately different sentences for criminal conduct of different severity." § 1A1.1, Federal Sentencing Guideline Manual, 2005 Edition. The defendant submits that a Guideline Sentence would be neither uniform nor proportional to the sentence meted out by this Court to the co-defendant in this present indictment. Rather, Mr. Africa submits that the sentence of 96 months, the sentence received by the principal co-defendant, would be both justified and reasonable.

**THE DEFENDANT'S SEXUAL ABUSE, ABANDONMENT, POOR EDUCATION, POOR ENVIRONMENT, AND RELATED TRAUMAS AS A CHILD ARE CONTRIBUTORS TO HIS CRIMINAL CONDUCT AND SHOULD SERVE AS MITIGATION AND DISTINGUISH HIS FROM SOMEONE WITH A DIFFERENT BACKGROUND.**

Courts have long recognized that factors such as mental impairment, poor education, poor environment, lack of positive role models, lack of opportunity, poverty, and traumas as a child are mitigating factors to be considered at sentencing. See <u>Penry v. Lynaugh</u>, 492 U.S. 302, 319 (1989)(evidence about the defendant's background is relevant because the belief "long held by this society, that the defendants who commit criminal acts that are attributable to a disadvantaged background … may be less culpable than defendants who have no such excuse.")

In Mr. Africa's case, the Court can certainly find ample instances of trauma when reviewing the "history and characteristics of the defendant." Such trauma, youthful drug abuse is relevant and mitigates against a lengthy sentence and that there exists a sufficient basis on which to adopt the defendant's sentencing proposal.

**A SENTENCE OF 96 MONTHS IS SUFFICIENT BUT NOT GREATER THAN NECESSARY TO COMPLY WITH THE PURPOSES OF SENTENCING**

It is submitted that in the instant case, a 96-month period of incarceration is sufficient to serve the goals of sentencing. Such a non-guideline sentence is an appropriate punishment for Mr. Africa's offense based on factors set forth in 18 U.S.C. § 3553(a) and would achieve the statute's four goals; punishment, protection of society, deterrence and rehabilitation.

While punishment is necessary in the instant case, the defendant need not be isolated to make the community safer. In fact, Mr. Africa's post-arrest behavior during the past 7 years demonstrates that the defendant is working diligently towards rehabilitation. A period of incarceration even approaching a guideline sentence would be excessive and run afoul of the parsimony clause's directive.

Mr. Africa well understands that adequate respect for the law and/or general deterrence are critical goals which the Court's sentence must impact. It is submitted that when the issue of how to promote respect for the law in Mr. Africa's case is considered, it is critical that the unique circumstances of this case be viewed in the context of Mr. Africa's history and characteristics.

The defendant submits that upon consideration of all the factors enumerated above, the Court can find that a sentence of 96 months with a period of supervised release is sufficient but no greater than necessary to accomplish the purposes of sentencing.

## IV. CONCLUSION

For the foregoing reasons, defendant Bomani Africa respectfully requests that the Court impose a sentence that is "sufficient, but not greater than necessary," to satisfy all of the relevant sentencing goals set forth in 18 U.S.C. § 3553(a).

Respectfully Submitted,

The Defendant
Bomani Africa

_/s/ *Bruce D. Koffsky*__
Bruce Donald Koffsky, Esq.
Koffsky & Felsen, LLC
1150 Bedford Street
Stamford, Connecticut  06905
Tel.  203-327-1500
Fax.  203-327-7660
bkoffsky@snet.net
Fed Bar No.  ct03772

CERTIFICATION

THIS IS TO CERTIFY that on February 7, 2023, a copy of the foregoing was filed electronically [and served by mail on anyone unable to accept electronic filing]. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

_____/s/ *Bruce D. Koffsky*__
Bruce D. Koffsky